**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF TEXAS**

**SAN ANTONIO DIVISION**

**FILED**

JUN 2 9 2026

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

| | | |
|---|---|---|
| MARK ANTHONY ORTEGA | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Case No. _____ |
| QUALIFI, LLC, a Pennsylvania | § | |
| Limited Liability Company, | § | |
| Defendant. | § | |

**SA26CA4097**

**JKP**

**PLAINTIFF'S ORIGINAL COMPLAINT**

1.    This action seeks statutory damages to stop Defendant Qualifi, LLC ("Qualifi" or "Defendant"), which markets itself under the trade name "GoQualifi," from placing and directing unsolicited and unlawful telemarketing text messages to Plaintiff Mark Anthony Ortega ("Plaintiff") to sell him business loans, lines of credit, and merchant cash advances. The calls violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA"), and the Texas Business and Commerce Code, Chapters 302 and 305.

2.    Despite the fact that Plaintiff's telephone number has been registered on the National Do Not Call Registry for more than fourteen years, Defendant, itself and through third-party lead-generation vendors texting on its behalf and for its benefit, directed an anonymous telemarketing campaign at Plaintiff from rotating telephone numbers. Not one message identified who was sending it or on whose behalf it was sent. When Plaintiff finally asked who was texting him, the sender identified itself by Defendant's own trade name: "Hey Mark, this is GoQualifi."

3.    Defendant's conduct has caused Plaintiff harm, including the invasion of his privacy, aggravation, annoyance, depletion of his phone battery and time.

**BACKGROUND ON THE TCPA**

1

4.      Enacted in 1991 with bipartisan support, the TCPA aims to protect consumers from the nuisance and invasion of privacy caused by unsolicited telemarketing calls, reflecting Congress's recognition of such calls as a "scourge of modern civilization." See 137 Cong. Rec. 30821 (1991).

5.      Decades later, the TCPA remains a crucial safeguard against the ever-increasing volume of unwanted calls, which consistently rank among the top consumer complaints. See *Omnibus TCPA Order*, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015). The TCPA remains a vital tool for combating these abuses, and its private right of action is essential to empower individuals to hold violators accountable.

6.      The TCPA strictly forbids telephone solicitations to numbers listed on the National Do Not Call Registry, 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2), and requires every person or entity engaged in telemarketing to institute minimum internal do-not-call procedures before initiating any telemarketing call. 47 C.F.R. § 64.1200(d). These provisions are designed to protect consumers from the unique harms associated with these types of intrusive calls, including wasted time, invasion of privacy, and the potential for economic loss.

7.      A seller cannot avoid TCPA liability by outsourcing its telemarketing to third parties. The TCPA's private right of action expressly reaches calls made "by or on behalf of the same entity," 47 U.S.C. § 227(c)(5), and the Federal Communications Commission has confirmed that sellers may be held vicariously liable for telemarketing violations committed by third-party marketers under federal common-law agency principles, including actual authority, apparent authority, and ratification. *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd 6574, 6584 (2013)

## JURISDICTION AND VENUE

2

8. This Court has subject matter jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. See *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA). As this action involves alleged violations of the TCPA, a federal question is presented, thus conferring jurisdiction upon this Court.

9. Additionally, this Court has supplemental jurisdiction over the claims arising under Tex. Bus. & Com. Code § 302 and § 305. While the Texas Business and Commerce Code, Chapter 302 and 305, is a state law, it complements and supplements the federal TCPA by providing additional protections to Texas residents against unwanted telemarketing calls. Under 28 U.S.C. § 1367, federal courts may exercise supplemental jurisdiction over state law claims that are so related to claims within the court's original jurisdiction that they form part of the same case or controversy.

10. In this instance, the claims under the Tex. Bus. & Com. Code § 302 and § 305, are intertwined with the TCPA claims, as they both arise from the same set of facts involving the Defendant's telemarketing calls to Plaintiff. The legal issues and factual questions involved in both sets of claims are closely related, and it would be efficient and convenient for the Court to address them together in a single proceeding. Therefore, the Court's supplemental jurisdiction is appropriate to encompass the claims arising under Tex. Bus. & Com. Code § 302 and § 305.

11. This Court has personal jurisdiction over Defendant because Defendant, itself and through agents acting on its behalf, purposefully directed its unlawful telemarketing activities at Texas and specifically at Plaintiff, who resides in this district, by transmitting telemarketing text

3

messages to a Texas telephone number. By soliciting business from Texas residents, Defendant purposefully availed itself of the privilege of conducting activities within the State of Texas.

12.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to this action occurred within this district.

## PARTIES

13.    Plaintiff Mark Anthony Ortega is a natural person who resided in San Antonio, Bexar County, Texas at all times relevant hereto.

14.    Defendant Qualifi, LLC is a Pennsylvania Limited Liability Company with its principal office and registered office at 1974 Sproul Rd, Ste 200, Broomall, PA 19008-3402. Defendant may be served with process at its registered office.

15.    Defendant is a "person" as that term is defined by 47 U.S.C. § 153(39).

## FACTUAL BACKGROUND

16.    On or about January 23, 2012, Plaintiff registered his cellular telephone number, 210-744-9663 ("Plaintiff's Number"), with the National Do Not Call Registry. Plaintiff has never de-listed this number.

17.    Plaintiff is, and has been at all times relevant to this action, the regular and sole user of Plaintiff's Number.

18.    Plaintiff uses his cellular phone primarily for personal, residential, and household purposes.

19.    Plaintiff is the individual subscriber of the telephone number, the account is registered in Plaintiff's personal name, and Plaintiff pays his cellular telephone bill using his own personal funds and is not reimbursed by corporate funds.

20.    Plaintiff uses this telephone line daily to communicate with family members, friends, and personal medical providers.

4

21.    Plaintiff's Number is designated for residential use, as it is assigned to a consumer telephone exchange service and is not assigned to a telephone exchange service designated for business use.

22.    Plaintiff's Number is registered and billed in Plaintiff's individual name; and it is paid for with Plaintiff's personal funds.

23.    Plaintiff has never had any prior business relationship with Defendant, has never been a customer, has never inquired about Defendant's products or services prior to receiving the messages described below, and has never granted prior express invitation, permission, or written consent to Defendant or any entity acting on its behalf to receive telemarketing calls or text messages.

24.    On Thursday, May 28, 2026, at 4:48 PM, Plaintiff received a telemarketing text message from telephone number (561) 668-2257. The verbatim content was: "Hi Mark, Ortega Capital could qualify for up to 400k, no PG. 550+ score is ok. Funded next-day. Interested? Reply STOP to opt out." The message did not identify the individual sending it, the entity on whose behalf it was sent, or any street address or telephone number at which the seller could be contacted.

25.    On Friday, May 29, 2026, at 5:55 PM, Plaintiff received a second telemarketing text message, this time from a different telephone number, (646) 926-9982. Its content was verbatim identical to the May 28 message: "Hi Mark, Ortega Capital could qualify for up to 400k, no PG. 550+ score is ok. Funded next-day. Interested? Reply STOP to opt out." The transmission of an identical script from two different telephone numbers within two days demonstrates a coordinated, automated mass-texting campaign originating from a common source.

26.    On Sunday, May 31, 2026, at 11:41 AM, Plaintiff received a third telemarketing text message from the same number, (646) 926-9982. The verbatim content was: "Mark, Is your

5

business doing over $20k/mo? If so, we can fund around $115k, pay back $2650/week for 15 months. Interested? Reply STOP to opt out." Again, the message did not identify the individual sender, the seller, or any address or telephone number for the seller.

27.     On Monday, June 1, 2026, at 6:16 PM, Plaintiff received a fourth telemarketing text message from yet another telephone number, (646) 386-0975. The verbatim content was: "Mark, if we could offer you a LOC up to $750k starting at 1% monthly, would it help? No PG, funded next-day. Interested? Reply STOP to opt out." Once again, the message did not identify the individual sender, the seller, or any address or telephone number for the seller.

28.     Each of these messages solicited Plaintiff to purchase loan products, merchant cash advances, loans, and lines of credit, and encouraged Plaintiff to respond for the purpose of entering a loan transaction.

29.     On Wednesday, June 3, 2026, at 7:45 AM, in an effort to identify the entity responsible for the anonymous messages, Plaintiff replied to the (646) 386-0975 number: "Do you have a website?"

30.     At 10:30 AM that same morning, the sender responded by identifying Defendant by its trade name and directing Plaintiff to Defendant's website: "Hey Mark, this is GoQualifi. You can learn more abaout us here: https://goqualifi.com/ If you are currently looking for funding to scale, do you have 5 minutes for a quick call today or tomorrow to see exactly how much you qualify for?" (errors in original).

31.     "GoQualifi" is Defendant's trade name, and goqualifi.com is Defendant's website. Defendant's Chief Executive Officer, Edward DeAngelis, uses the email address eddie@goqualifi.com and an email signature identifying him as CEO of "QualiFi, LLC" at 1974

Sproul Rd, Suite 200, Broomall, PA 19008, the same entity name and address on file with the Pennsylvania Department of State for Defendant.

32.    Shortly after receiving the 10:30 AM message, Plaintiff replied to the same number with an unequivocal do-not-call request and a demand for Defendant's written do-not-call policy. Plaintiff's verbatim message stated: "Please stop contacting me and add me to your internal do not call list. I am also requesting that you email a copy of your written do not call policy, along with your company name, contact name, mailing address, and phone number, to mortega@utexas.edu".

33.    Later that same day, June 3, 2026, Plaintiff wrote to Defendant's Chief Executive Officer, Edward DeAngelis, identifying the offending telephone numbers, (646) 386-0975, (646) 926-9982, and (561) 668-2257, and the unlawful solicitations sent to Plaintiff's cellular telephone.

34.    Mr. DeAngelis responded in writing the same day. He denied that Defendant's own employees sent the messages, stating that Defendant is located in Pennsylvania, that its team members use "local RingCentral phone numbers," and that Defendant is "not a cold call shop." In the same email, however, he admitted that Defendant "spend[s] a lot of money on marketing / lead generation, paid ads etc, to generate qualified appointments" for Defendant's team, and that Defendant is "purchasing business loan leads from a few different vendors."

35.    In a follow-up email the same day, Mr. DeAngelis stated that he had checked Defendant's "entire salesforce CRM" and found "no record of [Plaintiff] even in our companies [sic] database." Neither Mr. DeAngelis nor anyone else acting for Defendant produced the written do-not-call policy Plaintiff had demanded, identified the lead-generation vendors from whom Defendant purchases leads, or described any do-not-call procedures, supervision, or suppression practices applicable to Defendant's telemarketing or to the vendors texting on its behalf. To date, Defendant has produced no written do-not-call policy.

36. The automated nature of the telemarketing campaign directed at Plaintiff is evidenced by the use of at least three rotating originating telephone numbers over five days, the transmission of verbatim-identical scripts from different numbers, and the generic "Reply STOP to opt out" boilerplate appended to each message, hallmarks of pre-scheduled mass-texting software rather than manual, individualized human communication. On information and belief, the rotation of originating numbers was designed to evade carrier spam filtering and do-not-call enforcement.

## AGENCY AND VICARIOUS LIABILITY

37. The telemarketing text messages described above were sent either by Defendant's own personnel or by one or more third-party lead-generation vendors retained, directed, and paid by Defendant to generate "qualified appointments" and "business loan leads" for Defendant's sales team. The identities of those vendors are known to Defendant and will be confirmed in discovery.

38. Actual authority: Defendant admits that it purchases business-loan leads and qualified appointments from telemarketing vendors. On information and belief, Defendant engaged those vendors for the specific purpose of soliciting consumers by text message; supplied or approved the campaign parameters, including the loan products, dollar amounts, and pricing terms offered in the messages; and compensated the vendors for responsive leads and appointments. Telemarketing performed at a seller's request, subject to its direction, and for its benefit is performed with the seller's actual authority.

39. Apparent authority: The sender texting from (646) 386-0975 held itself out to Plaintiff as "GoQualifi," used Defendant's trade name, directed Plaintiff to Defendant's own website, goqualifi.com, and offered to schedule a call to determine how much Plaintiff could "qualify for" under Defendant's loan programs. A reasonable consumer would understand, and

8

Plaintiff did understand, the messages to come from Defendant. On information and belief, Defendant authorized its vendors to use its trade name and website in their solicitations, or knowingly permitted them to do so.

40. Ratification: Defendant knowingly accepted the benefits of the texting campaign, leads, appointments, and customers, while failing to inquire into, supervise, or correct the practices of the vendors texting on its behalf. Even after Plaintiff identified the offending numbers and messages directly to Defendant's Chief Executive Officer in writing on June 3, 2026, Defendant did not disavow the campaign, identify its vendors, produce a do-not-call policy, or take any corrective action. A seller that accepts the benefits of unlawful telemarketing with knowledge of the material facts, or that willfully ignores those facts, ratifies the conduct of those acting on its behalf.

41. Accordingly, Defendant is directly liable for any messages initiated by its own personnel and is vicariously liable, under principles of actual authority, apparent authority, and ratification, for the messages its lead-generation vendors initiated on its behalf.

42. The unauthorized telemarketing text messages that Plaintiff received from Defendant and its agents have harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, occupied his phone line, and disturbed the use and enjoyment of his phone.

43. In response to these calls, Plaintiff brings forward this case seeking an award of statutory and actual damages and costs.

## COUNT I
### Violation of the Telephone Consumer Protection Act
### (47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2))

44. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 43.

45.    The TCPA prohibits any person or entity from initiating any telephone solicitation to a residential telephone subscriber who has registered his telephone number on the National Do-Not-Call Registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2). These prohibitions apply to text messages sent to wireless telephone numbers. 47 C.F.R. § 64.1200(e).

46.    At all relevant times mentioned herein, Plaintiff's cellular telephone number, (210) 744-9663, was and remains registered on the National Do-Not-Call Registry. Plaintiff's number had been on the Registry continuously since January 23, 2012, for more than 31 days prior to each of the messages at issue.

47.    Defendant, in violation of 47 U.S.C. § 227(c), itself or through one or more lead-generation vendors acting on its behalf, initiated, or caused to be initiated, at least five telephone solicitations to Plaintiff's registered telephone number within a single 12-month period, on May 28, May 29, May 31, June 1, and June 3, 2026, each for the purpose of encouraging the purchase of Defendant's loan products and services. The TCPA provides a private right of action to any person who has received "more than one telephone call within any 12-month period by or on behalf of the same entity" in violation of the regulations prescribed under § 227(c). 47 U.S.C. § 227(c)(5).

48.    Defendant did not have Plaintiff's prior express invitation or permission, nor his written consent, nor did it have an established business relationship with Plaintiff that would exempt the messages from the TCPA's prohibitions.

49.    The aforementioned violations were made willfully and knowingly. Defendant and its agents transmitted anonymous solicitations from rotating telephone numbers, a practice designed to evade do-not-call screening and enforcement, to a number that has been registered on the National Do-Not-Call Registry for more than fourteen years, and Defendant took no corrective

action even after Plaintiff identified the offending numbers and messages directly to its Chief Executive Officer in writing.

50.    As a direct and proximate result of Defendant's violations, Plaintiff is entitled to statutory damages of up to $500 for each and every call that violated the TCPA. Furthermore, because Defendant's violations were willful and knowing, Plaintiff is entitled to, and the Court has the discretion to award treble damages up to $1,500 for each violation.

**COUNT II**
**Violation of the Telephone Consumer Protection Act**
**Failure to Institute Mandatory Internal Do-Not-Call Procedures**
**(47 C.F.R. § 64.1200(d); 47 U.S.C. § 227(c)(5))**

51.    Plaintiff realleges and incorporates by reference the allegations in Paragraphs 1 through 43.

52.    The TCPA and its accompanying regulations impose an affirmative obligation upon entities engaged in telemarketing to institute specific procedures before making any telemarketing calls. Specifically, 47 C.F.R. § 64.1200(d) dictates that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity." These requirements apply to text messages sent to wireless numbers. 47 C.F.R. § 64.1200(e).

53.    These mandatory minimum procedures require the telemarketer to have a written policy available upon demand (47 C.F.R. § 64.1200(d)(1)), to train its personnel engaged in telemarketing on the existence and use of the do-not-call list (47 C.F.R. § 64.1200(d)(2)), to record consumer opt-out requests (47 C.F.R. § 64.1200(d)(3)), to provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted (47 C.F.R. §

11

64.1200(d)(4)), and to maintain a record of do-not-call requests, which must be honored for five years (47 C.F.R. § 64.1200(d)(6)).

54.    Defendant, itself or through vendors texting on its behalf, initiated telemarketing text messages to Plaintiff, a residential telephone subscriber, without having instituted these mandatory minimum procedures. The absence of such procedures is evident from the campaign itself: the messages were sent anonymously from at least three rotating telephone numbers; none identified the individual sender, the seller, or any contact address or telephone number; Defendant failed to produce a written do-not-call policy upon Plaintiff's written demand; and Defendant's Chief Executive Officer, when confronted, could identify no record of Plaintiff and no do-not-call procedures, training, or suppression practices governing the vendors that text on Defendant's behalf. Under 47 C.F.R. § 64.1200(d)(3), where do-not-call requests are "recorded or maintained by a party other than the person or entity on whose behalf the call is made, the person or entity on whose behalf the call is made will be liable for any failures to honor the do-not-call request."

55.    Because Defendant failed to institute these mandatory minimum procedures prior to initiating the telemarketing campaign, every single text message Defendant or its agents sent to Plaintiff constitutes a separate violation of 47 C.F.R. § 64.1200(d).

56.    The aforementioned violations were made willfully and knowingly. Defendant's willful intent is evidenced by the anonymous, rotating-number design of the campaign and by Defendant's refusal to produce any do-not-call policy after a direct written demand.

57.    As a direct and proximate result of Defendant's violations, Plaintiff is entitled to statutory damages of up to $500 for each and every call that violated the TCPA. Furthermore, because Defendant's violations were willful and knowing, Plaintiff is entitled to, and the Court has the discretion to award treble damages up to $1,500 for each violation.

12

## COUNT III
### Violation of the Telephone Consumer Protection Act
### Failure to Maintain a Written Do-Not-Call Policy Available Upon Demand
### (47 C.F.R. § 64.1200(d)(1); 47 U.S.C. § 227(c)(5))

58.    Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 43.

59.    47 C.F.R. § 64.1200(d)(1) requires that any person or entity making calls for telemarketing purposes "must have a written policy, available upon demand, for maintaining a do-not-call list."

60.    On June 3, 2026, Plaintiff made a written demand for Defendant's written do-not-call policy by replying directly to Defendant's solicitation: "I am also requesting that you email a copy of your written do not call policy, along with your company name, contact name, mailing address, and phone number, to mortega@utexas.edu". The same day, Plaintiff separately corresponded in writing with Defendant's Chief Executive Officer concerning the unlawful messages.

61.    Despite Plaintiff's demand and direct written notice, neither Defendant nor anyone acting on its behalf has produced a written do-not-call policy. On information and belief, no such written policy exists. Defendant's failure to maintain a written do-not-call policy available upon demand violates 47 C.F.R. § 64.1200(d)(1).

62.    The aforementioned violations were made willfully and knowingly, as evidenced by Defendant's continued silence in the face of a written demand.

63.    As a direct and proximate result of Defendant's violations, Plaintiff is entitled to statutory damages of up to $500 for each and every call that violated the TCPA. Furthermore, because Defendant's violations were willful and knowing, Plaintiff is entitled to, and the Court has the discretion to award, treble damages up to $1,500 for each violation.

## COUNT IV
### Violation of the Telephone Consumer Protection Act
### Failure to Identify the Caller and Seller and Provide Contact Information
### (47 C.F.R. § 64.1200(d)(4); 47 U.S.C. § 227(c)(5))

64.    Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 43.

65.    47 C.F.R. § 64.1200(d)(4) requires that a person or entity making a call for telemarketing purposes "must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."

66.    None of the telemarketing text messages sent to Plaintiff on May 28, May 29, May 31, or June 1, 2026 identified the individual sender; none identified Defendant or any other entity as the seller on whose behalf the message was sent; and none provided any telephone number or address at which the seller could be contacted. The June 3, 2026 message named "GoQualifi" only because Plaintiff affirmatively asked who was texting him, and even that message provided no individual caller name and no telephone number or address for the seller.

67.    Each such message constitutes a separate violation of 47 C.F.R. § 64.1200(d)(4), actionable through the private right of action in 47 U.S.C. § 227(c)(5).

68.    The aforementioned violations were made willfully and knowingly. The anonymity of the messages was by design: the campaign used rotating, untraceable originating numbers and omitted all identifying information precisely so that consumers like Plaintiff could not identify, contact, or demand do-not-call compliance from the seller.

69.    As a direct and proximate result of Defendant's violations, Plaintiff is entitled to statutory damages of up to $500 for each and every call that violated the TCPA. Furthermore,

14

because Defendant's violations were willful and knowing, Plaintiff is entitled to, and the Court has the discretion to award, treble damages up to $1,500 for each violation.

## COUNT V
### Violations of the Texas Business and Commerce Code
### Telephone Solicitation Without a Registration Certificate
### (Tex. Bus. & Com. Code § 302.101)

70.    Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 43.

71.    Defendant, itself and through agents acting on its behalf, engaged in "telephone solicitation" as defined by Tex. Bus. & Com. Code § 302.001(7), which expressly includes "a transmission of a text or graphic message." Furthermore, pursuant to § 302.002, Defendant "made" a telephone solicitation at the exact moment it or its agents initiated the automated text messages to Plaintiff.

72.    Tex. Bus. & Com. Code § 302.101 provides that a seller "may not make a telephone solicitation from a location in this state or to a purchaser located in this state unless the seller holds a registration certificate for the business location from which the telephone solicitation is made." Registration is made with the Texas Secretary of State.

73.    A diligent search of the Texas Secretary of State's publicly available telemarketer database, conducted by Plaintiff on June 3, 2026, confirmed that Defendant holds no registration certificate    and    is    not    registered    as    a    telephone    solicitor    in    Texas. (https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp)

74.    Pursuant to Tex. Bus. & Com. Code § 302.303, Defendant's failure to hold a registration certificate prior to making telephone solicitations constitutes a "false, misleading, or deceptive act or practice" actionable under Subchapter E, Chapter 17 of the Texas Business and Commerce Code.

75.    Defendant's failure to register before placing telemarketing calls to Plaintiff constitutes multiple, separate violations of this chapter. Section 302.302(a) of the Texas Business and Commerce Code provides that a person who violates this chapter is subject to a civil penalty of no more than $5,000 for each violation.

76.    Furthermore, § 302.302(d) provides that the party bringing the action is also entitled to recover all reasonable costs of prosecuting the action, including court costs, investigation costs, deposition expenses, witness fees, and attorney fees.

**COUNT VI**
**Violation of the Texas Business and Commerce Code**
**Failure to Disclose the Seller's Street Address During a Solicitation**
**(Tex. Bus. & Com. Code § 302.202)**

77.    Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 43.

78.    Tex. Bus. & Com. Code § 302.202(1) strictly mandates that when a telephone solicitation is made, the seller shall provide the purchaser with "the complete street address of the location from which the salesperson is calling the purchaser" and, if different, "the complete street address of the seller's principal location." The statute imposes a conjunctive temporal requirement, stating this disclosure must be made "when a telephone solicitation is made and before consummation of any sales transaction."

79.    Because Defendant's telemarketing solicitations consisted entirely of text messages, Defendant was required by law to include its complete physical street address within the body of the text messages. Defendant and its agents completely failed to include any street address in any of the five (5) telemarketing text messages sent to Plaintiff. This failure constitutes multiple, separate violations of Tex. Bus. & Com. Code § 302.202.

16

80.     Pursuant to Tex. Bus. & Com. Code § 302.303, Defendant's failure to disclose its physical street address constitutes a "false, misleading, or deceptive act or practice" actionable under Subchapter E, Chapter 17 of the Texas Business and Commerce Code.

81.     Furthermore, Tex. Bus. & Com. Code § 302.302(d) provides that the party bringing the action is also entitled to recover all reasonable costs of prosecuting the action, including court costs, investigation costs, deposition expenses, witness fees, and attorney fees.

**COUNT VII**
**Violation of the Texas Business and Commerce Code**
**(Tex. Bus. & Com. Code § 305.053)**

82.     Plaintiff realleges and incorporates by reference the allegations in Paragraphs 1 through 43.

83.     Texas Business and Commerce Code § 305.053(a) explicitly provides a civil cause of action to any person who receives a communication that violates "47 U.S.C. Section 227, a regulation adopted under that provision, or Subchapter A," against "the person who originates the communication." Defendant originated the communications at issue, itself and through agents acting on its behalf. As previously alleged, Plaintiff's telephone number has been registered on the national do-not-call registry since January 23, 2012.

84.     As alleged in detail in Counts I through IV, Defendant violated 47 U.S.C. § 227 and the regulations adopted under it by initiating multiple telephone solicitations to Plaintiff's telephone number despite the number being registered on the National Do Not Call Registry, by failing to institute the mandatory internal do-not-call procedures, by failing to maintain a written do-not-call policy available upon demand, and by failing to identify the caller and seller and provide contact information in its solicitations.

85.     Because Defendant's conduct violated 47 U.S.C. § 227 and the regulations adopted under that provision, Plaintiff is entitled to bring this separate cause of action for those same violations under Texas state law.

86.     Pursuant to Tex. Bus. & Com. Code § 305.053(b), Plaintiff is entitled to recover the greater of his actual damages or $500 for each and every violation.

87.     Furthermore, because Defendant's violations were committed knowingly or intentionally, as evidenced by the anonymous, rotating-number design of the campaign and Defendant's failure to take any corrective action after written notice to its Chief Executive Officer, Plaintiff is entitled to an award of treble damages up to $1,500 for each violation, as permitted by Tex. Bus. & Com. Code § 305.053(c).

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court grant the following relief against Defendant:

A. For Defendant's violations of the TCPA, 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2) (Count I), award Plaintiff statutory damages of $500.00 for each violation, and find that Defendant's conduct was willful and knowing, thereby trebling the damages to $1,500.00 for each and every violation;

B. For Defendant's violations of the regulations prescribed under 47 U.S.C. § 227(c), 47 C.F.R. § 64.1200(d), (d)(1), and (d)(4) (Counts II, III, and IV), award Plaintiff statutory damages of $500.00 for each violation, and find that Defendant's conduct was willful and knowing, thereby trebling the damages to $1,500.00 for each and every violation;

C. For Defendant's violations of the Texas Business & Commerce Code § 302.101 (Count V), award Plaintiff statutory damages of up to $5,000.00 for each and every violation;

18

D. For Defendant's violations of the Texas Business & Commerce Code § 302.202 (Count VI), award Plaintiff civil penalties and/or statutory damages of up to $5,000.00 for each and every violation;

E. For Defendant's violations of the Texas Business & Commerce Code § 305.053 (Count VII), award Plaintiff statutory damages of $500.00 for each violation, and find that Defendant's conduct was knowing or intentional, thereby increasing the damages to $1,500.00 for each and every violation;

F. Award Plaintiff all reasonable witness fees, court costs, and other litigation expenses incurred by Plaintiff pursuant to Tex. Bus. & Com. Code § 302.302(d);

G. Award Plaintiff pre-judgment and post-judgment interest at the highest rates allowed by law; and

H. Grant any other and further relief, both at law and in equity, that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiff, Mark Anthony Ortega, demands a jury trial in this case.


Dated: June 24, 2026.

Respectfully submitted,

Mark Anthony Ortega
Plaintiff, Pro Se
mortega@utexas.edu
PO Box 702099
San Antonio, TX 78270
(210) 744-9663

19